UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TAMMY E. PARKER, | * |
| | * |
| Plaintiff, | * |
| | * No.: 1:10-CV-330 |
| vs. | * |
| | * JUDGE COLLIER |
| MUTUAL OF OMAHA, and its affiliate, | * |
| UNITED OF OMAHA LIFE INSURANCE | * MAGISTRATE LEE |
| COMPANY, | * |
| | * |
| Defendants. | * |

**SUPERSEDING AMENDED COMPLAINT**

Plaintiff, through counsel, for her Superseding Amended Complaint, alleges as follows:

**ALLEGATIONS APPLICABLE TO ALL CLAIMS**

1. Defendants, Mutual of Omaha, also known as Mutual of Omaha Insurance Company, and United of Omaha Life Insurance Company (collectively "Mutual of Omaha"), is a life insurance company which transacts business in Tennessee, and did so in 2005.

2. Chattanooga Housing Authority ("CHA") is, and was in 2005, a public non-profit corporation. CHA is classified by the Tennessee Secretary of State as a public benefit corporation which carries out public housing and urban development programs as its primary activities. CHA is governed by a seven-member Board of Commissioners appointed by the Mayor of Chattanooga.

3. In 2005, Mutual of Omaha issued the following policies to CHA:

| | |
|---|---|
| Group Voluntary Term Life Benefits Policy ($100,000) | Policy No. GVTL-365B |
| Group Life and Accidental Death and Dismember Benefits Policy ($60,000) | Policy No. GLUG-365B |

Group Long-Term Disability
Benefits Policy                    Policy No. GLTD-365B

4.   These policies of insurance were established for employees of CHA and at all relevant times have been maintained as part of a CHA benefits plan (the "Plan"). At all relevant times the Plan has been a governmental plan within the purview of 29 USCS § 1002(32) of the Employee Retirement Income Security Act ("ERISA").

5.   At all relevant times, CHA has acted as the Plan administrator and the agent of Mutual of Omaha.

6.   Neither administration of the Plan nor the claims in this lawsuit are governed by ERISA.

7.   Plaintiff, Tammy E. Parker, was an employee of CHA in 2005, at which time she became an insured under each of the policies of insurance.

8.   On or about August 8, 2008, while employed by CHA and while she was an insured under the policies, Ms. Parker was diagnosed with a recurrence of breast cancer disease which had been previously diagnosed and treated in 1997.

9.   When the recurrence was diagnosed in 2008, the cancer had metastasized to Ms. Parker's liver. Under these circumstances, the cancer was designated as Stage IV, which is an incurable, terminal stage of the disease.

10.  Ms. Parker began chemotherapy treatment in September 2008. She continued to work until October 31, 2008.

11.  From October 31, 2008 to the present, Ms. Parker has been unable to perform the material duties of any gainful occupation for which she has been fitted by training, education or experience (hereinafter referred to as "totally disabled" or "total disability").

## LIVING BENEFITS OPTION

12.  The Group Life and Accidental Death and Dismemberment Benefits Policy ("ADD Policy") and Group Voluntary Term Life Benefits Policy ("VTL Policy") each contained a Living Benefits Option, which provided for accelerated payment ("Living Benefits") to the insured of one-half of the death benefits, which in Ms. Parker's case was $80,000. The pertinent provisions in the policies provided:

> **Benefits**
>
> If you incur a Terminal Condition while insured under this
> provision, you and your legal representative, while you are living,

may request Living Benefits. . . . The Benefits will be paid in a lump sum.

**<u>Conditions</u>**

(a)  To be insured for Living Benefits, you must be insured for Life Insurance Benefits.

(b)  We may require your beneficiary's, and in community property states, your spouse's written consent before Living benefits are paid.

(c)  Your Life Insurance Benefits and the amount you may convert in accordance with the life Conversion Privilege will be reduce by the living Benefit amount paid under this provision.

(d)  An insured person may receive Living Benefits only once.

**<u>Definition</u>**

Terminal Condition means an injury or sickness:

(a)  expected to result in your death within 12 months; and

(b)  from which there is no reasonable prospect of recovery; as determined by us, our medical staff, or a qualified party selected by us.

13.  On or about December 29, 2008, Ms. Parker submitted applications for Living Benefits of $30,000 under the ADD Policy and $50,000 under the VTL Policy.

14.  Ms. Parker's applications were accompanied by a Mutual of Omaha form entitled Attending Physician's Statement of Terminal Condition ("Physician's Statement"), which had been filled out by Ms. Parker's attending physician, oncologist and hematologist Darrell Johnson, M.D. Paragraph 4 of the pre-printed form requested a diagnosis, which Dr. Johnson stated to be: "Breast cancer with liver metastasis."

15.  Paragraph 6(b) of the pre-printed form provided in pertinent part as follows:

Prognosis: Is this injury or sickness terminal (expected to result in death from which there is no reasonable prospect of recovery)? If Yes, please give expectations for continued survival: ___6, ___12,

3

or ___ 24 months. If "No," please give expectations for continued survival, ___ months.

16. Dr. Johnson did not fill in any of the blanks, but responded with a note beside paragraph 6(b) which simply read: "unknown at this time."

17. Upon receipt of Ms. Parker's application and at all times thereafter while her application was pending and during appeals of its coverage decisions, Mutual of Omaha had affirmative duties: (a) to fairly, honestly, diligently and without any deception evaluate, and when appropriate reevaluate, all of the evidence which it possessed or should have obtained with regard to the decision to pay or deny Ms. Parker's applications for policy benefits; and (b) to deal with Ms. Parker in good faith and treat her financial interest as at least equal to Mutual of Omaha's own interest. Mutual of Omaha breached these duties as hereinafter described.

18. Mutual of Omaha's claims representative, Karen Barajas, was responsible for handling Ms. Parker's claim for Living Benefits. Ms. Barajas referred the applications to Mutual of Omaha's Medical Director, Timothy Tse, M.D. In the Referral Document, Ms. Barajas included the following comment to Dr. Tse:

> The Policy defines Terminal Condition as expected to result in your death withir (sic) 12 months with no reasonable prospect for recovery. Please review any doctor's notes on Filenet under GL10087616 and advise, in your opinion, if Ms. Parker meets our definition of a terminal condition.

19. On or about February 6, 2009, Dr. Tse in a message to Ms. Barajas stated that Ms. Parker's claim "Does Not Meet Medical Necessity" and further stated:

> **Physician Handling**: Review Completed by Timothy Tse MD MBA FAPA Status is Does Not Meet Medical Necessity
> History - - - The insured is a 42-year old female with diagnosis of recurrence breast cancer with metastasis in August 2008. The pathology showed stage IV with liver metastasis (M1). The evidence-based medicine showed that the survival rate for stage 4 breast cancer is about 18 months. In the claim form, AP [attending physician] stated the prognosis was "unknown at this time". The information does not support the insured's condition meets (sic) the terminal definition. Ttse
> Timothy Tse/MutualOMA on 02/06/2009 10:12:17 AM

20. Mutual of Omaha, by a February 9, 2009 letter from Ms. Barajas to Ms. Parker, denied the Living Benefits applications. However, Dr. Tse's own opinion was a basis for paying the Living Benefits, because:

   (a) Ms. Parker's diagnosis of Stage IV breast cancer was made on August 8, 2008;

   (b) a period of 18 months Dr. Tse's life expectancy estimate beginning in August 2008 would end in February 2010;

   (c) as of February 9, 2009 when Ms. Parker's applications were denied, her life expectancy was only 12 months according to Dr. Tse's opinion.

21. In any event, had there been conducted a fair, honest and diligent evaluation of Ms. Parker's life expectancy, it would have been concluded that her life expectancy was 12 months or less at the time of her diagnosis, and she would have received Living Benefits as a result.

22. The conclusion that Ms. Parker's life expectancy was 18 months was arrived at by a series of wrongful acts and omissions by Ms. Barajas and Dr. Tse which included, without limitation, the following:

   (a) Ms. Barajas selected Dr. Tse to render an opinion as to the life expectancy of an individual with Stage IV breast cancer when she knew, or should have known or suspected, that Dr. Tse was not qualified to render the opinion;

   (b) Dr. Tse was, in fact, a psychiatrist who did not possess the education, training and experience in the field of oncology to render a fair and reasoned opinion;

   (c) Dr. Tse himself knew, or should have known, that he did not have the expertise to render a fair and reasoned opinion;

   (d) Dr. Tse did not obtain the advice of another physician with sufficient expertise to render a valid opinion in Ms. Parker's case;

   (e) Dr. Tse knew, or should have known, that the life expectancy of an individual who has been diagnosed with Stage IV breast cancer cannot be fairly estimated without knowing and analyzing the unique facts and circumstances of that individual's case, and that prognosticating without such information may well lead to the denial of a meritorious claim;

   (f) Dr. Tse ignored the unique facts and circumstances of Ms. Parker's case;

   (g) Dr. Tse's opinion was not founded on "evidence-based medicine;"

(h) Dr. Tse purportedly relied upon Dr. Johnson's response – "unknown at this time" – as a basis for his own life expectancy opinion, when he knew or should have known that this statement was not an indication of Dr. Johnson's opinion;

(i) Dr. Tse's written opinion was so vague and unsupported that Ms. Barajas knew, or should have suspected or known, that Dr. Tse had not conducted a fair, honest and diligent investigation;

(j) Ms. Barajas' denial letter was misleading, because it insinuated that the 18-month life expectancy arrived at by Mutual of Omaha was based, in whole or part, on Dr. Johnson's opinion, when he had not rendered an opinion; and

(k) Had Dr. Johnson been asked for his opinion in a meaningful manner, he would have opined that Ms. Parker's life expectancy was 12 months or less.

23. Accordingly, had Mutual of Omaha obtained an estimation of Ms. Parker's life expectancy in a fair reasonable manner, that life expectancy would have been 12 months or less and she would not have been denied the Living Benefit.

## CONTINUATION OF BENEFITS

24. The ADD Policy and VTL Policy contained identical provisions titled Continuation of Life Insurance Benefits (hereinafter, "Uninterrupted Payment Benefit"). Under this provision, Mutual of Omaha agreed to continue the policies in force and effect, so long as Ms. Parker continued to pay the premium.

25. The policies also contained identical provisions titled Continuation of Life Insurance Benefits Due to Total Disability (hereinafter "Waiver of Premium Benefit"). Under this provision, Mutual of Omaha agreed to waive the payment of premiums and continue the policies in force and effect, so long as Ms. Parker remained totally disabled.

26. By letter dated February 10, 2009 from its attorney, Lisa Koch, Mutual of Omaha informed Ms. Parker that she was "eligible for waiver of premium beginning February 1, 2009."

27. However, premiums were actually paid to Mutual of Omaha for the months of February through July 2009, thereby creating a 6 month credit balance which would be available to pay on any premium which might become due in the future.

28. By letter dated October 29, 2009 from its claims analyst, Doreen A. Cruz, Mutual of Omaha acknowledged to Ms. Parker: "Your group life insurance has continued under the waiver of premium provision of this group contract." However, in the same letter Mutual of Omaha wrongly and without any reasonable basis informed Ms. Parker that: "you are no longer totally disabled" and that "we are unable to continue your group life insurance coverage."

29. Mutual of Omaha violated its duty and covenant of good faith and fair dealing towards Ms. Parker when it deceptively ignored its possession of and failed to begin to apply the 6 months of premium which it had received for the period of February through July 2009, months during which by its own admission the Waiver of Premium Benefit was keeping the policies in force. Accordingly, Mutual of Omaha's termination of Ms. Parker's coverage under the life policies was a bad faith violation of her Uninterrupted Payment Benefit.

30. Moreover, the termination of the life policies was a breach of the Waiver of Premium Benefit, because Ms. Parker was in October 2009, and has remained to the present, totally disabled.

31. Mutual of Omaha violated its duty and covenant of good faith and fair dealing and failed to fairly, honestly and diligently investigate whether Ms. Parker was totally disabled by acts and omissions which include, without limitation, the following:

(a) Ms. Cruz's letter of October 29, 2009, which asserts that Ms. Parker was no longer disabled, was based on a report by Stuart Schlanger, M.D., Mutual of Omaha's medical director, who essentially spotlighted and mischaracterized a single office note of Dr. Johnson, disregarding other pertinent information in Dr. Johnson's records and the claims file which supported Ms. Parker's continuing total disability;

(b) In December 2009, after Ms. Parker appealed the revocation of the Waiver of Premium Benefit, another physician working on behalf of Mutual of Omaha, Thomas Reeder, M.D., contacted Dr. Johnson's office to discuss her disability status. However, Dr. Reeder spoke to an LPN in Dr. Johnson's office, not Dr. Johnson himself, and he then forwarded a self-serving letter for the LPN's signature which Dr. Johnson mistakenly signed.

(c) Dr. Johnson attempted to correct this letter in correspondence of February 23, 2010, in which he informed Mutual of Omaha that Ms. Parker "has been totally disabled since October 2008 and remains so today without any expected changes in her condition."

(d) Upon receipt of Dr. Johnson's letter, its duty to Ms. Parker required Mutual of Omaha to reevaluate its decision to discontinue her Waiver of Premium Benefit, but it failed and refused to do so;

(e) On June 18, 2010, Dr. Johnson executed an affidavit which was supplied to Mutual of Omaha. In the affidavit, he informed Mutual of Omaha of mistakes in his electronically-generated medical records which erroneously overstated Ms.

7

Parker's ability to work, and he attached copies of the corrected records to reiterate that Ms. Parker had been since October 2008 disabled from working and that she would likely continue to be disabled for the rest of her life;

(f) Upon receipt of Dr. Johnson's affidavit, its duty to Ms. Parker required Mutual of Omaha to reevaluate its decision to discontinue her Waiver of Premium Benefit, but it failed and refused to do so;

(g) On August 17, 2010, Laura Witherspoon, M.D., Ms. Parker's surgeon, executed an affidavit which was supplied to Mutual of Omaha. In her affidavit, she informed Mutual of Omaha that her opinion was the same as Dr. Johnson's, namely that Ms. Parker was and had been since October 2008 continuously and totally disabled;

(h) Upon receipt of Dr. Witherspoon's affidavit, its duty to Ms. Parker required Mutual of Omaha to reevaluate its decision to discontinue her Waiver of Premium Benefit, but it failed and refused to do so;

(i) On December 7, 2010, Dr. Witherspoon recited in a letter Ms. Parker's 1997 history of breast cancer, her 2008 recurrence with a metastatic lesion to her liver and another to her reconstructed right breast, her surgeries at both sites and her interim development of metastasis to her brain, all for the purpose of reiterating to Mutual of Omaha that Ms. Parker had been and still was unable to work at all;

(j) Upon receipt of Dr. Witherspoon's letter, its duty to Ms. Parker required Mutual of Omaha to reevaluate its decision to discontinue her Waiver of Premium Benefit, but it failed and refused to do so.

32. Mutual of Omaha's denial of Ms. Parker's Waiver of Premium Benefit constituted a breach of the terms and conditions of the policies and constituted a further violation of Mutual of Omaha's duty and covenant of good faith and fair dealing towards Ms. Parker.

### FIRST CLAIM FOR RELIEF
(Failure to Pay Living Benefits)

33. Plaintiff incorporates by reference the allegations of paragraphs 1 though 32.

34. As a consequence of Mutual of Omaha's refusal to pay Living Benefits, Ms. Parker has suffered damages of $80,000, plus pre-judgment interest.

### SECOND CLAIM FOR RELIEF
(Anticipatory Breach/Repudiation of Life Policies for Failure to Pay Living Benefits)

35. Plaintiff incorporates by reference the allegations of paragraphs 1 though 34.

36. Due to the materiality of the breach of its obligation to pay Living Benefits, Mutual of Omaha anticipatorily breached and/or repudiated the life policies, thereby making due all remaining performance and rendering Mutual of Omaha liable for the remaining $80,000 of death benefits.

### THIRD CLAIM FOR RELIEF
(Breach of Uninterrupted Payment Benefit and Waiver of Premium Benefit – Anticipatory Breach/Repudiation of Life Policies)

37. Plaintiff incorporates by reference the allegations of paragraphs 1 though 36.

38. In the alternative, if Mutual of Omaha did not breach the terms and conditions of the life policies by its refusal to pay the Living Benefit, or if it did breach such terms and conditions but is found not to have also committed an anticipatory breach or repudiation of the life policies by such breach, it did breach the terms and conditions of the life policies when it failed and refused to honor the Uninterrupted Payment Benefit and Waiver of Premium Benefit.

39. Due to the materiality of the breach of the Uninterrupted Payment Benefit and Waiver of Premium Benefit, Mutual of Omaha anticipatorily breached and/or repudiated the life policies, thereby making due all remaining performance and rendering Mutual of Omaha liable for the $160,000 death benefits which would have otherwise not been due and payable until Ms. Parker's death.

### FOURTH CLAIM FOR RELIEF
(Remaining Death Benefits – Declaratory Judgment)

40. Plaintiff incorporates by reference the allegations of paragraphs 1 though 39

41. In the alternative, if Mutual of Omaha did not breach the terms and conditions of the life policies by its refusal to pay Living Benefit, and its failure and refusal to honor the Uninterrupted Payment Benefit and Waiver of Premium Benefit was not an anticipatory breach and/or repudiation of the life policies, Mutual of Omaha has nevertheless committed an ongoing breach of the life policies by failing to honor the Uninterrupted Payment Benefit and Waiver of Premium Benefit.

42. Accordingly, Plaintiff requests a declaratory judgment that Ms. Parker has been, from February 1, 2009 to the present, entitled to the Uninterrupted Payment Benefit Waiver of Premium Benefit so as to maintain the policies in force, with payment of benefits of $160,000 due at her death, along with an ancillary order that Mutual of Omaha reimburse Ms. Parker for the premiums in its possession for the period from February through July 2009 which it has wrongfully withheld from her.

## FIFTH CLAIM FOR RELIEF
(Long-Term Disability Benefits)

43. Plaintiff incorporates by reference the allegations of paragraphs 1 though 42.

44. The Group Long-Term Disability Benefits Policy ("LTD Policy) provided a monthly benefit to Ms. Parker in the event of her disability. This policy defined Disability as follows:

> **Disability** and **Disabled** mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which you are:
>
> (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis, except if You are a pilot, You are unable to perform all of the Material Duties of any Gainful Occupation for which You are reasonably fitted by training, education or experience; and
> (b) unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings due to that same Injury or Sickness.
>
> After a Monthly Benefit has been paid for 2 years, **Disability** and **Disabled** mean You are unable to perform all of the Material Duties of any Gainful Occupation for which You are reasonably fitted by training, education or experience.

45. The LTD Policy further provided:

> **Benefits**
>
> If while insured under this provision, You become Totally Disabled due to Injury or Sickness, We will pay the Monthly benefit shown on the Schedule. Benefits will begin after You satisfy the Elimination Period shown in the Schedule.

46. The LTD Policy Schedule provided for an Elimination Period of "90 calendar days."

47. By letter dated February 10, 2009, from Mutual of Omaha's attorney, Lisa Koch, Ms. Parker was told that her claim for long-term disability benefits had been approved.

48. Mutual of Omaha paid long-term benefits to Ms. Parker beginning in February 2009.

10

49. In February 2010, it was discovered that Ms. Parker's cancer had metastasized to her brain. She underwent a radio wave brain surgery on February 23, 2010, followed by a series of whole brain radiation treatments in February, March and April 2010.

50. By letter dated April 6, 2010 from its claims representative Zofia Nicholson, Mutual of Omaha informed Ms. Parker that it was denying Ms. Parker further long-term disability benefits, making the outrages assertion that as of March 31, 2010, Ms. Parker was capable of performing all of the duties of her former job at CHA, despite the ongoing treatment for her brain cancer.

51. Mutual of Omaha discontinued Ms. Parker's long-term disability benefits as of November 31, 2010, despite that fact that she remained Totally Disabled.

52. Mutual of Omaha was duty bound under the LTD Policy to conduct a fair, objective and thorough investigation of the facts and circumstances to determine whether Ms. Parker remained Totally Disabled, which it failed to do.

53. Mutual of Omaha's denial of Ms. Parker's long-term disability benefits breached the terms and conditions of the LTD Policy and constituted a further violation of Mutual of Omaha's duty and covenant of good faith and fair dealing towards Ms. Parker.

54. As a consequence of Mutual of Omaha's breach of the LTD Policy, Ms. Parker has incurred damages equal to the sum of all due but unpaid benefits under her LTD Policy, plus pre-judgment interest.

## SIXTH CLAIM FOR RELIEF
(Statutory Bad Faith Damages)

55. Plaintiff incorporates by reference the allegations of paragraphs 1 though 54.

56. Mutual of Omaha's above-described breaches of the VTL Policy, ADD Policy and LTD Policy and its refusals to pay claims thereunder were not in good faith.

57. On or before December 15, 2010, Plaintiff made demand on Mutual of Omaha which was sufficient to satisfy the 60-day notice provision of Tenn. Code Ann. § 56-7-105(a), such that Mutual of Omaha may be required to pay an additional sum of 25% of its liability on the claims asserted against it, and further to pay her reasonable attorney's fees.

## SEVENTH CLAIM FOR RELIEF
(Violation of Tennessee Consumer Protection Act)

58. Plaintiff incorporates by reference the allegations of paragraphs 1 though 57.

59. Mutual of Omaha committed the above-described unfair or deceptive acts or practices in willful or knowing violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-102, et seq.

60. As a result of such deceptive acts and practices, Ms. Parker has suffered a loss of money or property of not less than $160,000.

61. Accordingly, Plaintiff may be awarded and hereby requests treble damages totaling not less than $480,000, plus reasonable attorney's fees and costs.

Wherefore, Plaintiff prays that judgment be entered in her favor and against Mutual of Omaha for money damages alleged herein, a declaratory judgment if necessary, reasonable attorney's fees, prejudgment interest, court costs and such other or different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable to a jury.

Respectfully submitted,

WEILL & LONG, PLLC

By: /S/ Ira M. Long, Jr.
 Flossie Weill – BPR No. 4637
 Ira M. Long, Jr. – BPR No. 22411
 1205 Tallan Building, 2 Union Square
 Chattanooga, Tennessee 37402
 Telephone: 423-756-5900
 Facsimile: 423-756-5909

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that I have on March 28, 2011 caused a copy of the foregoing to be filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Ira M. Long, Jr.